UNITED STATES of America,
Plaintiff,

v.

Jamal RICHARDS, Defendant.

No. Crim 01–50009.

United States District Court,
E.D. Michigan,
Southern Division.

May 24, 2001.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for plaintiff.

Federal Defender, Federal Defender Office, Flint, MI, Kenneth S. Karasick, Flint,

MI, Christopher J. McGrath, Novi, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Defendant's motion to suppress evidence [docket entry 10]. After thoroughly considering the parties' written submissions, and after conducting more than six hours of hearings over the course of three days, the Court **GRANTS** Defendant's motion.

## I FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2001, uniformed officers Troy Simpson and Alfred Fowlkes of the Flint Police Department observed a Cadillac parked in the yard of 2312 Dupont, Flint, Michigan. The engine of the auto was operating and the headlights were illuminated. Believing that the Cadillac was parked unlawfully, the officers parked their cruiser and walked toward the Cadillac.

At that point, Defendant exited the Cadillac. The Court credits Officer Simpson's uncontradicted testimony to the effect that Officer Simpson greeted Defendant by saying "what's up?" and then said "come here," or words to that effect. Defendant returned Officer Simpson's salutation, but kept walking. When Officer Simpson again asked Defendant to "come here," Defendant ran and entered the residence at 2312 Dupont.

The officers then knocked on the door. Miss Tamra Dixon answered their knock and, in Defendant's term, "invited" the officers into the house. The officers then encountered Defendant sitting on a love seat, ran Defendant's name through a Law Enforcement Information Network (LEIN) check, and discovered that there was an outstanding warrant for Defendant's arrest on a charge of failure to appear in court on a charge of operating a motor vehicle while his driver's license was suspended. The officers then immediately arrested Defendant.

After taking Defendant into custody, Officer Simpson conducted a warrantless search of the Cadillac, which was turned off and still parked in the lawn of 2312 Dupont. Officer Simpson found a loaded sidearm during the course of that search, which led to Defendant's indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Officer Simpson also called a tow truck so as to impound the Cadillac. Officer Simpson testified that he cannot recall whether he called for a tow truck before or after searching the Cadillac and finding the sidearm, and there is no other evidence in the record bearing on the sequence of those two events.

At the time of these matters, the Cadillac was registered not to Defendant, but to Mrs. Carlin J. Richards, who is Defendant's mother. After police found the firearm, but before the tow truck arrived, Mrs. Richards arrived on the scene. For reasons that are unclear, police did not turn the Cadillac over to Mrs. Richards.

On April 18, 2001, Defendant filed a motion to suppress the sidearm found in the vehicle on the grounds that (1) police lacked the authority to seize the vehicle and (2) the search of the car and seizure of the firearm were unreasonable under the Fourth Amendment. Plaintiff filed its response to that motion on May 11, 2001.

The Court scheduled an evidentiary hearing for May 14, 2001. Although Defendant had the burden of proof regarding

the issue of standing,[1] Mr. Kenneth S. Karasick appeared on Defendant's behalf with no evidence as to whether Defendant had standing to challenge the search and seizure in question. The Court was faced with the option of denying the motion for want of evidence or adjourning the hearing until the merits of Defendant's motion could be presented. Because the Court prefers to decide cases on the merits whenever possible, it chose the latter option. The Court notes, however, that had its calendar been less flexible, the Court could have denied Defendant's motion on May 14, 2001, when Defendant's counsel appeared for the evidentiary hearing without any evidence.

On May 18, 2001, Mr. Christopher McGrath, who is Mr. Karasick's co-counsel, ably represented Defendant. For reasons set forth on the record in open court that day, the Court held that Defendant has standing to challenge the search and seizure of the Cadillac. During the remainder of the hearing held on May 18 and during the segment held on May 22, the Court heard evidence and argument relating to the issue now before the Court: whether the Court must suppress the sidearm police seized from the Cadillac.

## II LEGAL STANDARD

■ A search not conducted pursuant to a warrant issued by a magistrate is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In such cases, the Government bears the burden of establishing by a preponderance of the evidence why an exemption from the warrant requirement applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Van Lewis*, 409 F.Supp. 535, 541 (E.D.Mich.1976).

## III ANALYSIS

■ The Government first argues that Defendant ran from the car as police approached. Thus, the Government asserts, Defendant "abandoned the vehicle and relinquished any right to claim Fourth Amendment protections." (Pl.Br. at 5.) There is authority for the proposition that a driver who runs from his vehicle at the sight of police has, indeed, abandoned that vehicle and relinquished his Fourth Amendment right to the auto. *See, e.g., United States v. Barlow*, 17 F.3d 85, 88 (5th Cir.1994). But these cases are grounded in the idea that "a police officer may enter [an abandoned] vehicle on public property to ascertain its owner." *Id.* Where, as here, the vehicle is on private property, and is parked safely, the Government's abandonment argument is inapposite.

The Court also rejects Plaintiff's abandonment argument because the evidence before the Court shows that Defendant turned off the Cadillac's engine and lights and walked normally out of the parked car. It was only after Officer Simpson's second challenge that Defendant ran, and by that point he had safely left the Cadillac in its parked location. The Court thus holds as a matter of fact that Defendant never abandoned the Cadillac.

1. A defendant seeking to challenge the search or seizure of a vehicle or other piece of property pursuant to the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *See United States v. Hartwell*, 67 F.Supp.2d 784, 793 (E.D.Mich. 1999) (Gadola, J.). Specifically, he must show that (1) he manifested a subjective expectation of privacy in the object of the challenged search and (2) society is prepared to recognize that expectation as legitimate. *Id.* (citations omitted).

■ The Government's second and final argument is that a warrantless search of the Cadillac was permissible because it was an inventory search of the vehicle. Police "may make a warrantless search of a legitimately seized vehicle provided the inventory is conducted according to standardized criteria or established routine." *United States v. Hurst*, 228 F.3d 751, 758 (6th Cir.2000) (citation omitted). The rationale behind inventory searches is "to protect the public, protect the property rights of the vehicle's owner, and protect the police from potential claims and potential dangers." *Id.* at 758. The Government has the burden of showing that the inventory search was conducted pursuant to standardized procedures. *See United States v. Gregory*, Nos. 91–6400, 91–6431, 1992 WL 393144, at *7 (6th Cir. Dec.22, 1992).

■ For two reasons, the Court holds that there was no valid inventory search in this case. The first is that property must be legitimately seized before an inventory search of it can be conducted. *See United States v. Byrd*, No. 94–530199, at **4–5 (6th Cir. Feb. 21, 1995); *United States v. Vickers*, 599 F.2d 132, 133 n. 2 (6th Cir. 1979). The Government, however, has failed to show by a preponderance of the evidence that the Cadillac was legitimately seized when police searched it and found the sidearm.

■ During the proceedings of May 18,[2] counsel for both parties agreed that the police seized the vehicle when they called for the tow truck. Case law supports the conclusion that police have seized a vehicle once they call a tow truck to take it away.

*See Lewis v. Cardwell*, 476 F.2d 467, 468 (6th Cir.1973) (reasoning that "[o]ne of the state officials then called a wrecker to seize the automobile"), *rev'd on other grounds*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

On May 22, however, the testimony of Officer Simpson established that he is not certain that the search of the Cadillac followed the officers' impoundment of the vehicle by calling for the tow truck; according to Officer Simpson, police may have searched the vehicle, found the weapon, and *only then* impounded the Cadillac by calling a tow truck. The Court is thus satisfied that Officer Simpson does not know whether he searched a legitimately seized vehicle or a vehicle that had yet to be seized. Plaintiff has adduced no other relevant evidence as to whether the Cadillac was legitimately seized before the search. Therefore, the Court holds that Plaintiff has not carried its burden of proving that the policemen found the sidearm pursuant to a search of a legitimately seized vehicle, and Plaintiff has thus failed to establish that the inventory search exception legitimizes the warrantless search of the Cadillac.

■ The second reason that the Court holds that the Government has not shown that police conducted a valid inventory search is that the alleged inventory search was not "conducted according to standardized criteria or [an] established routine." As discussed above, the Government has the burden of showing that any inventory search was conducted pursuant to standard procedures. *See Colorado v. Bertine*, 479 U.S. 367, 373, 107 S.Ct. 738, 93

---

2. On May 22, Plaintiff changed its argument, contending that the legitimate seizure occurred once officers decided to call the tow truck, and not when they actually called the tow truck. The Court rejects this argument because Plaintiff adduced no authority for the proposition that police have seized a vehicle once they have decided to seize it, but before they actually have taken any steps to effect that seizure. A seizure requires some overt act. *See Black's Law Dictionary* 1359 (6th ed.1990).

L.Ed.2d 739 (1987); *United States v. Hahn,* 922 F.2d 243, 246 (5th Cir.1991). Such standard procedures may be internal police regulations, as opposed to a statute or ordinance. *See Bertine,* 479 U.S. at 374–75, 107 S.Ct. 738.

In this case, Plaintiff argues in its brief that the search and seizure were legitimate pursuant to the following police regulation:

> 4/020.3–1 *Impoundment for Safekeeping.* Any time a vehicle is rendered unattended on public or private property not belonging to the vehicle owner or user as a result of Flint police action, and custody of the vehicle is not turned over by the person in charge of the vehicle to another who is legally eligible to take charge, the vehicle shall be impounded for safekeeping. An alternative to impoundment may be arranged if the unattended vehicle is protected from theft or damage while in the custody of the Flint Police Department. An alternative, to be acceptable, must transfer custody of the vehicle from the Department to the vehicle owner or his agent.

The Court rejects the contention that police seized and searched the vehicle pursuant to the policy quoted above. That policy is not implicated until "Flint police action" "renders unattended" a vehicle, but the Government has not shown that "Flint police action" caused the Cadillac to be unattended. Rather, the Government's own evidence, in the form of Officer Simpson's testimony, shows that Defendant parked the car, turned off the engine and headlamps, and began to walk away from the vehicle before his encounter with Flint police even began. Nothing that the Flint police did, therefore, caused the Cadillac to be any more unattended than it would have been had they never stopped to speak with Defendant in the first instance.

The Court also doubts that the Cadillac ever was rendered "unattended" at all during the events in question, at least within any sensible definition of the word. *Webster's New World Dictionary* contains three definitions of "unattended": (1) "not attended or waited on"; (2) "unaccompanied *(by or with )*"; and (3) "neglected or ignored." *Webster's New World Dictionary of American English* 1451 (3d Col. ed.1988). Only the third definition makes any sense in the context of Flint police policy: almost no auto is ever "attended or waited on" and even safely parked cars are usually "unaccompanied" by any person. Only when "unattended" as written in the above-quoted policy is read to mean "neglected or ignored" does the Flint police policy effect the Flint Police Department's stated goal of protecting the vehicle from theft or damage. (Pl.Ex. 6; testimony of Lt. Matherly on May 22, 2001.)

In this case, however, the Government has not shown that the Cadillac was "neglected or ignored." Instead, the auto was parked safely, with the engine and lights disengaged, and at no more or less risk than other vehicles parked in the neighborhood. Plaintiff argues that the vehicle was illegally parked pursuant to Flint ordinance 28–103, which prohibits an auto from being parked "within the setback area of any property used for residential purposes," and thus intimates that the Cadillac was neglected. But the Government has not established a violation of that ordinance, because it never provided authority that defined "setback area." The Court is therefore in no position to conclude that the Cadillac was unattended by virtue of being parked illegally. Even if the Cadillac had been parked illegally, the Court is aware of no authority for the proposition that an illegally parked car is, simpliciter, neglected or ignored.

The Government also relies upon ordinance 28–38(7), which provides that police may remove a vehicle that hampers the owner's use of his private property. Because Plaintiff adduced no evidence that the Cadillac hampered the property owner's use of 2312 Dupont, the Court holds that the Government has not proven that an inventory search was valid under this provision.

Finally, the Government relies upon ordinance 28–152, which provides that when, *inter alia,* a vehicle is "parked or left standing on any street, or in any municipally-operated parking lot or enclosure in the City," the police may remove the vehicle. Here, the vehicle was on private property, so ordinance 28–152 is inapposite.

The Government, in short, has failed to show that the auto was "unattended," and therefore has failed to show that a predicate existed for application of the Flint police policy quoted above. Therefore, the Government has failed to show that police conducted an inventory search of the car pursuant to the standard procedures of that policy. For that reason, the Court bases its holding on the alternate ground that Plaintiff has not carried its burden of proving that police seized and searched the Cadillac according to "standardized criteria or established routine."

## IV CONCLUSION

Policemen searched the Cadillac without a warrant. The Government, for the reasons delineated above, has not proven that Defendant abandoned the car or that the search followed a legitimate seizure (impoundment) of the vehicle. The Court therefore concludes that no exception to the warrant requirement applies and, accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress the sidearm is **GRANTED.**

**SO ORDERED.**