**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James RICHARDS, Defendant–Appellee.**

No. 01–1999.

United States Court of Appeals, Sixth Circuit.

Jan. 17, 2003.

Before DAUGHTREY and SILER, Circuit Judges; and ALDRICH, District Judge.*

ALDRICH, District Judge.

The plaintiff United States of America appeals the district court's grant of defendant Jamal Richards's motion to suppress a firearm seized during a warrantless search of his car. For the following reasons, we **AFFIRM** the district court's decision.

---

* The Honorable Ann Aldrich. United States District Judge for the Northern District of Ohio, sitting by designation.

## I. Background

On March 5, 2001, officers Troy Simpson and Alfred Fowlkes of the Flint, Michigan Police Department noticed a Cadillac parked in the front yard of a residence. Simpson was familiar with the particular residence. Simpson had previously spoken with the residence's occupant, Tamra Dixon, regarding drivers who parked their cars in her driveway and on her front yard. The Cadillac's engine was running, and its headlights were illuminated. Believing that the Cadillac was parked illegally, the officers parked their police cruiser and walked toward the Cadillac.

At this point, the defendant. Jamal Richards, switched off the engine and headlights and got out of the Cadillac. Simpson greeted Richards by saying "what's up?" and Richards responded in kind. Simpson then said "come here," to which Richards failed to respond. Simpson again told Richards to "come here," at which point Richards ran and entered the residence.

The officers knocked on the residence's door. Dixon answered the door and invited the officers into the residence. The officers saw Richards in the living room sitting on a love seat. Dixon, at first unaware that Richards had entered her residence, explained that someone must have let Richards in and that she knew him from the neighborhood as "Domino." Simpson asked Richards why he had run into the residence, and Richards said that he knew the owner. Simpson then told Richards that the Cadillac was illegally parked in the front yard and asked Richards for his name so that he could issue Richards a parking citation. Richards had

no identification, so the officers ran Richards's name through the Law Enforcement Information Network (LEIN). The officers discovered that there was an outstanding warrant for Richards's arrest on a charge of failure to appear in court on a charge of operating a motor vehicle with a suspended license. The officers immediately arrested Richards and cited him for a parking violation. At some point, the officers also ran a check on the registration of the Cadillac's license plate and discovered that the Cadillac was registered to Carlin Richards. Richards's mother ("Mrs.Richards").

After taking Richards into custody. Simpson conducted a warrantless search of the Cadillac. Before opening the driver side door. Simpson looked through the Cadillac's driver side window and saw a firearm sticking out from under the driver's seat. Upon conducting a search of the Cadillac, Simpson discovered that the firearm was a loaded nine-millimeter semi-automatic pistol. At some point, even though Dixon never objected to the Cadillac being parked in her front yard. Simpson called a tow truck to impound the Cadillac. Simpson's testimony as to when he called the tow truck was inconsistent. Simpson initially testified that he called the tow truck prior to conducting the search. On cross-examination, however, Simpson testified that he called the tow truck "five to ten minutes" after conducting the search. The district court made no factual finding as to whether Simpson called the tow truck before or after he conducted the search. After the officers found the firearm but before the tow truck arrived, Mrs. Richards arrived on the scene. The officers, however, refused to turn the Cadillac over to Mrs. Richards and provided Mrs. Richards no reason for refusing to do so.

On March 21, 2001, Richards was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On April 18, 2001, Richards filed a motion to suppress the firearm seized during the search of the Cadillac. The district court conducted an evidentiary hearing and heard more than six hours of testimony over three days. The district court granted Richards's motion to suppress concluding that (1) the government did not show that the Cadillac was legitimately seized before the inventory search took place: and (2) the government did not show that the officers conducted the inventory search "according to standardized criteria or established routine."

## II.

When considering a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law *de novo*. *See United States v. Hurst,* 228 F.3d 751, 756 (6th Cir.2000) (citing *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999) and *United States v. Walker,* 181 F.3d 774, 776 (6th Cir.1999), *cert denied,* 528 U.S. 980, 120 S.Ct. 435, 145 L.Ed.2d 340 (1999)). "The evidence must be reviewed, however, 'in the light most likely to support the district court's decision.'" *Hurst,* 228 F.3d at 756 (quoting *Navarro–Camacho,* 186 F.3d at 705).

A search not conducted pursuant to a warrant issued by a magistrate is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One well-defined exception to the warrant requirement is the inventory search, which is defined as the "search of property lawfully seized and detained, in order to ensure that it is harmless, to

secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *United States v. Whren,* 517 U.S. 806, 811 n. 1, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Inventory searches are reasonable so long as they are administered in good faith, according to reasonable, standardized criteria. *See Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The government has the burden of showing that the inventory search was conducted pursuant to standardized criteria. *See United States v. Gregory,* Nos. 91–6400, 91–6431, 1992 WL 393144, at *7 (6th Cir. Dec. 22, 1992). The inventory search exception is the only justification proffered by the government for the warrantless search of the Cadillac.

Among those criteria which must be standardized are the circumstances in which a car may be impounded. *See generally U.S. v. Kimes,* 246 F.3d 800, 805 (6th Cir.2001) ("Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'") (citing *Bertine,* 479 U.S. at 375–76). The government contends that the Cadillac was impounded pursuant to the following Flint Police Department regulation:[1]

4/020.3–1 *Impoundment for Safekeeping.* Any time a vehicle is rendered unattended on public or private property not belonging to the vehicle owner or user as a result of Flint police action, and custody of the vehicle is not turned over by the person in charge of the vehicle to another who is legally eligible to take charge, the vehicle shall be impounded for safekeeping. An alternative to impoundment may be arranged if the unattended vehicle is protected from theft or damage while in the custody of the Flint Police Department. An alternative, to be acceptable, must transfer custody of the vehicle from the Department to the vehicle owner or his agent.

Applying this regulation to the instant case, the district court held, and we agree, that the Cadillac was not impounded according to the standardized criteria cited by the government because the Cadillac was not rendered unattended as a result of Flint police action.[2] First, the government failed to demonstrate that the Cadillac was rendered unattended. The evidence indicates that the Cadillac was safely parked on private property inhabited by Dixon, who, at the least, knew Richards from the neighborhood as "Domino." There is no evidence that Dixon ever asked the officers to remove the Cadillac from her property or that she was unable or unwilling to attend to the Cadillac.[3] While it does ap-

---

**1.** The government also cited to Flint Police regulation 4/020.2, which provides that a car may be "impounded by the Flint police Department to protect the vehicle from a direct possibility of theft or damage, to protect the civil liabilities of the Department, to protect the public from traffic hazards, and to obtain evidence." This regulation, however, merely lists the purposes for impounding a car, not the circumstances under which a car may be impounded.

**2.** The district court's finding that the Cadillac was not impounded according to standardized criteria appears to be an interpretation of

the Flint Police Regulations, and, as such, a legal issue reviewed *de novo.*

**3.** The evidence also indicates that, prior to the search of the Cadillac, the officers checked the Cadillac's registration and discovered that Richards's mother was the actual owner of the Cadillac. The record does not indicate how Mrs. Richards came to learn of her son's presence at Dixon's residence, but Mrs. Richards appeared on the scene shortly after the officers searched the Cadillac and asked that she be allowed to take possession of the Cadillac. The officers refused Mrs. Richards's

pear that the Cadillac may have been parked in violation of Flint traffic ordinance 28–103, which prohibits cars from parking within the setback area of any residential property, this is not a sufficient basis for seizure of the Cadillac under Flint police regulation 4/020.3–1 or any other standardized criteria proffered by the government.

Second, the government also failed to demonstrate that, even if the Cadillac was rendered "unattended," it was rendered unattended as a result of the officers' actions. The evidence indicates that Richards parked the Cadillac, turned off the engine and headlamps, and began to walk away from the Cadillac prior to his encounter with the officers. As the district court correctly noted, nothing that the officers did caused the Cadillac to be any more unattended than it would have been had the officers never stopped to speak with Richards in the first place.

Therefore, because the government failed to demonstrate that Officers Simpson and Fowlkes impounded the Cadillac according to standardized criteria, we uphold the district court's suppression of the firearm seized during a warrantless search of the Cadillac.

## III.

For the foregoing reasons, we **AFFIRM** the district court's decision granting Richards's motion to suppress.

SILER, Circuit Judge, dissenting.

I believe that the officers impounded the Cadillac in accordance with the Flint Police Department Regulation 4/020.3–1. The vehicle was clearly rendered unattended as a result of the police action. It is true, as the majority asserts, that Richards parked the car in Dixon's front yard and rushed

into her house. To some extent, he was still attending to the vehicle while he was in the house. It was only after he was arrested that the vehicle was unattended. Moreover, I respectfully disagree with the majority's conclusion that because Dixon did not ask the officers to remove the illegally parked vehicle from her property, one can infer that in some way Richards turned over custody of the vehicle to her.

When Richards was arrested, the police properly could impound the Cadillac. Whether they searched the Cadillac before calling the wrecker is of no consequence, so long as they intended to impound the vehicle. *See, e.g., United States v. Harvey,* 16 F.3d 109, 112 (6th Cir.1994); *United States v. Thomas,* 11 F.3d 620, 628 (6th Cir.1993). Much is made of the fact that the true owner, Richards' mother, appeared on the scene and asked that she be allowed to take possession of the Cadillac. The officers probably should have turned over custody of the car to her at that time. However, before she arrived, Officer Simpson had already peered through the window of the Cadillac and had seen the firearm sticking out from under the driver's seat and had seized the pistol. There was nothing improper about Simpson's looking through the window of the car. Once he saw the handgun in plain view, he could lawfully remove it. *See United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Texas v. Brown,* 460 U.S. 730, 738, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Had Mrs. Richards appeared earlier on the scene, it may have been appropriate for the court to have suppressed any evidence taken as a result of a search subsequent to her taking custody of the vehicle. However, that did not happen. For all these reasons, I

request to take possession of the Cadillac that she owned.

672

would reverse the suppression of the firearm seized from the Cadillac.