**UNITED STATES of America,
Plaintiff,**

v.

**Anthony Lamar GREEN, Defendant.**

**No. CRIM. 03–50003.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 12, 2003.

David A. Koelzer, Federal Defender, Federal Defender Office, Flint, MI, for Anthony Lamar Green (1), defendant.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for U.S. Attorneys.

## OPINION AND ORDER GRANTING MOTION TO SUPPRESS EVIDENCE

GADOLA, District Judge.

On January 22, 2003, a federal grand jury charged Defendant in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[1] Defendant now moves to suppress this firearm arguing that it was obtained by the police in violation of the Fourth Amendment.

The Court held an evidentiary hearing on the matter on May 27, 2003. At the hearing, the Court ordered the parties to file memoranda of law addressing three issues: (1) whether Defendant has standing to contest the search at issue in this case, (2) whether Defendant consented to this search, and (3) whether Defendant's post-search confession should be suppressed under the fruit of the poisonous tree doctrine. Defendant filed a timely memorandum on June 25, 2003, and the Government filed a timely memorandum on July 24, 2003. For the reasons set forth below, the Court will grant Defendant's motion to suppress evidence.

## I. BACKGROUND

On July 13, 2001, a dispute developed between Defendant's brother and his brother's neighbors. The brother's girlfriend telephoned Defendant to tell him about the dispute. Defendant then drove to his brother's house. After Defendant arrived at his brother's house, he exited his vehicle and began to speak with his brother and the neighbors. Several minutes later, at approximately 7:32 p.m., the police also arrived on the scene.

Soon thereafter, the firearm in question was seized after a warrantless search of Defendant's vehicle.[2] This warrantless search was conducted by Officer John Newcomer of the Mount Morris Township Police Department. Officer Newcomer claims that he sought and obtained Defendant's consent to search the vehicle. Defendant, however, avers that he did not consent to the search. Moreover, Defendant maintains that he was never asked to give his consent.

Officer Newcomer located the firearm next to the driver's seat underneath a pillow. Defendant was arrested for carrying a concealed weapon and was transported to the Mount Morris Township Police De-

---

1. The issue of Defendant being a felon is not in dispute. According to the indictment, Defendant was convicted in 1996 of distributing marijuana, 21 U.S.C. § 841(a)(1), a crime punishable by a term of imprisonment exceeding one year. *See United States v. Green*, No. 95–50043, Judgment (E.D.Mich. Dec. 17, 1996) (Gadola, J.).

2. Defendant did not own the vehicle; however, Defendant did have possession and control of the vehicle for roughly one week before the incident, and there is no evidence that Defendant obtained the vehicle by illegitimate means. *See infra* Part II.A.2 (concluding that Defendant has standing); *see also* Gov't Memo at 1 (conceding that Defendant has standing).

partment for questioning. At approximately 8:19 p.m., Defendant was advised of his *Miranda* rights and signed a form consenting to give a statement to the police. Thereafter, Defendant confessed to owning the firearm in question. He admitted that he purchased it two weeks before the arrest for approximately $50.00. He further admitted that he placed the firearm in the vehicle.

Afterwards, Officer Newcomer composed a detailed incident report recounting all the events of that evening. Importantly, this report did not include any indication that Officer Newcomer, or any other officer, received Defendant's consent to search the vehicle. Furthermore, there is not even a hint that Officer Newcomer, or any other officer, sought Defendant's consent.

Some four months later, a state prosecutor on the case found some discrepancies in Officer Newcomer's report. As a result, the prosecutor declined to issue an arrest warrant at that time, and Officer Newcomer was asked to clarify certain issues in the report. On November 21, 2001, Officer Newcomer submitted a supplemental report clarifying two issues. First, the supplemental report stated that Officer Newcomer asked Defendant if the police could check Defendant's vehicle and that Defendant responded in the affirmative. Second, it identified the brother-neighbor dispute as the source of the trouble on the night in question.

## II. ANALYSIS

There are three issues before the Court: (1) whether Defendant has standing to contest the search at issue in this case, (2) whether Defendant consented to this search, and (3) whether Defendant's post-search confession should be suppressed under the fruit of the poisonous tree doctrine.

### A. Standing

#### 1. Legal Standard

A defendant seeking to challenge the search or seizure of a vehicle or other piece of property pursuant to the Fourth Amendment must first establish that he has standing to challenge the search or seizure. *See United States v. Richards*, 147 F.Supp.2d 786, 788 n. 1 (E.D.Mich. 2001) (Gadola, J.), *aff'd*, 56 Fed.Appx. 667 (6th Cir.2003). Specifically, he must show that (1) he manifested a subjective expectation of privacy in the object of the challenged search and (2) society is prepared to recognize that expectation as legitimate. *See id.* With respect to a vehicle, ownership is not required; nevertheless, there must be "clear evidence of continuing possession and control, as well as no evidence that the driver obtained the car illegitimately." *United States v. Baker*, 221 F.3d 438, 443 (3d Cir.2000).

#### 2. Discussion

Here, Defendant admitted that he did not own the vehicle. *See* Tr. at 50, 59. Nonetheless, Defendant has sufficiently manifested a subjective expectation of privacy in the vehicle. *See* Def. Mot. at ¶ 3. Moreover, Defendant testified that he had possession of the vehicle for approximately one week before the search at issue in this case. *See* Tr. at 50. Thus, Defendant has clearly established that he had continuing possession and control of the vehicle. Further, there is no evidence that Defendant obtained the vehicle illegitimately. Accordingly, Defendant has standing to challenge the search at issue. *See Baker*, 221 F.3d at 443; *see also* Gov't Memo. at 1 (conceding that Defendant has standing).

### B. Consent

The primary dispute in this case is whether Defendant consented to the search of his vehicle. Defendant contends

that he did not consent to the search of the vehicle at any time. On the other hand, the Government contends that Defendant did indeed consent to the search of his vehicle.[3]

### 1. Legal Standard

█ The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, a search is not unreasonable if valid consent to the search is obtained. *See United States v. Palomino*, 100 F.3d 446, 450 (6th Cir.1996).

"When, as here, it is alleged that the defendant consented to the search, 'it is the Government's burden, by a preponderance of the evidence, to show through 'clear and positive testimony' that valid consent was obtained.'" *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir.2002) (quoting *United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir.1996)). Furthermore, "'[w]hether consent to a search is voluntarily given is a question of fact.'" *Haynes*, 301 F.3d at 679 (quoting *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998)).

### 2. Discussion

█ In this case, the Government has not shown through clear and positive testimony that valid consent was obtained. The Government correctly states that, because of "the different versions of the events presented by the parties[,] . . . the central issue for the Court is credibility", Gov't Memo. at 4; however, the Court finds that the Government's version lacks credibility.

It is undisputed that Officer Newcomer's initial police report did not include any reference to the police asking and/or obtaining Defendant's consent for the search of the vehicle. *See* Tr. at 16. Although Officer Newcomer testified that he omitted this detail inadvertently, *see id.* at 16–17, his testimony is not credible on this point. Justifying a warrantless search is one of the most important facts to include in a police incident report. *See id.* at 42, ln. 22–25 (Officer Newcomer conceding that a justification of a warrantless search is an important part of a police report). The Court does not believe that a seasoned law enforcement veteran, such as Officer Newcomer, *see id.* at 5 (more than ten years of experience), would simply omit such a vital detail from one of his reports. Consequently, the report's silence on the issue of consent bolsters Defendant's testimony that consent was never sought and/or given.

Moreover, Officer Newcomer's supplemental police report, created more than four months after his initial report, also undermines his credibility on the issue of obtaining consent. The four-month delay alone raises questions as to the supplemental report's veracity. More importantly, however, is the context in which the supplemental report was written. Officer Newcomer testified that a state prosecutor "found some discrepancies" in his initial report and, as a result, the prosecutor declined to seek an arrest warrant at that time. *Id.* at 16, ln. 11–13 (emphasis added). He further testified that he was asked to "clarify certain issues in the report." *Id.* at 16, ln. 13–14 (emphasis added). The Government maintains that these "discrepancies" and "issues" were actually limited to only one discrepancy/is-

---

**3.** Defendant further contends that there is no basis other than the alleged consent to support the constitutionality of the search. *See* Def. Mot. at ¶ 6. The Government has not

argued to the contrary; thus, the Court concludes that, absent Defendant's valid consent, the search was unlawful.

sue. However, Officer Newcomer's use of plural nouns in his testimony (i.e., "discrepancies" and "issues") leads the Court to believe that he was asked to responded to more than one issue. The supplemental report, on its face, also indicates that Officer Newcomer was responding to more than one discrepancy/issue. The one issue raised by the Government concerns the state prosecutor's request that Officer Newcomer clarify "who the trouble was" at the scene. *Id.* at 16, ln. 18–20; *see also* Def. Mot. Ex. at 3. Officer Newcomer's supplemental report dutifully responded to this issue. *See* Def. Mot. Ex. at 4. However, before doing so, he also addressed the initial report's silence on the issue of consent. *See id.*

The inquiry and supplemental report read as follows:

11/13/01

Sir, on 11–13–01 warrant was temp[orally] denied by [Assistant Prosecuting Attorney] Maxwell. Maxwell would like the Ofc. in Charge to clarify who the trouble was when called to the house.
Respectfully,
Ofc. E. White . . .

— -

Issue Clarification, dated 11/21/01

Sir,

Reference to why vehicle was checked. [I] did ask Mr. Anthony Green who's vehicle it was and he stated it was his. I then asked if we could check the vehicle, and Mr. Anthony Green said yes.

Reference to who the trouble was at that location. Mr. Terry Green was having trouble with the neighbors and he called his brother Anthony Green to come over with the gun. After speaking with the neighbors they were having trouble with Mr. Terry Green.

Respectfully Submitted

Ofc. John C. Newcomer II
*Id.*

This text belies Officer Newcomer's testimony that he, *sua sponte*, identified and corrected his purported omission in the initial report about the issue of consent. The two strikingly similar introductory sentences of the supplemental report's two paragraphs suggest that Officer Newcomer fashioned both paragraphs as responses to someone's request for additional information. In other words, the manner in which Officer Newcomer composed the first paragraph indicates that he was (despite his contrary testimony, *see* Tr. at 16–17) responding to a call for him to account for the absence of any justification in the initial report for the warrantless search. This gamesmanship undermines Officer Newcomer's credibility and leads the Court to deeply doubt the accuracy of his testimony. Further, the Court agrees with Defendant that Officer Newcomer's supplemental report "appears to have been an effort to 'clean up' a bad search." Def. Memo. at 3–4. That is, it was an effort to show that consent for the search was given when, in reality, it was not given.

As a consequence, the Court concludes that the Government has not met its burden of establishing that Defendant consented to the search for three reasons. First, Defendant unequivocally testified that the police never asked him if they could search his vehicle and that he never consented to the search of his vehicle. *See* Tr. at 55, ln. 8–12. Second, Defendant's testimony is strengthened by a key piece of objective evidence: Officer Newcomer's initial police report. This initial report, which is the police report closest in time to the incident, is silent on the issue of consent. This silence supports Defendant's argument that the police never sought and/or obtained Defendant's consent for the search. Third, Officer Newcomer's ex-

planation that the silence in the initial report was a mere inadvertent oversight, which he, on his own, identified and "corrected" via his supplemental report, is, for the reasons articulated *supra*, inherently implausible and, therefore, lacks credibility. *See Haynes*, 301 F.3d at 679–81.[4] Thus, the Court will suppress the seized firearm at issue in this case because it was obtained in violation of the Fourth Amendment.

## C. Fruit of the Poisonous Tree

Defendant further contends that since the search violated the Fourth Amendment, all fruits of the search, including his confession that he owned the firearm in question, should be suppressed as well. The Government, however, argues that Defendant's confession should not be suppressed because it was voluntarily given after he was properly advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### 1. Legal Standard

"[E]vidence recovered indirectly from an illegal search or seizure is . . . inadmissible as 'fruit of the poisonous tree.'" *Northrop v. Trippett*, 265 F.3d 372, 377–78 (6th Cir. 2001) (citing *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9

L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392–93, 40 S.Ct. 182, 64 L.Ed. 319 (1920)). The fruit of the poisonous tree doctrine "bars evidence which, though not obtained in the illegal search, was derived from information or items obtained in the search." *United States v. Leake*, 95 F.3d 409, 411 (6th Cir.1996) (citing *Murray v. United States*, 487 U.S. 533, 536–37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (doctrine "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary [illegally obtained] evidence")). "The doctrine ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly." *Leake*, 95 F.3d at 411.

■■■ The Supreme Court of the United States has long held that a post-*Miranda*-warning confession obtained by the exploitation of a Fourth Amendment violation may not be used against a criminal defendant. *See Kaupp v. Texas*, —— U.S. ——, ——, 123 S.Ct. 1843, 1844, 155 L.Ed.2d 814 (2003) (per curiam); *Oregon v. Elstad*, 470 U.S. 298, 306, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). A post-*Miranda*-warning confession must be suppressed "unless that confession was 'an act of free will [sufficient] to purge the primary taint'" of the Fourth Amendment violation.[5] *Kaupp*, —— U.S. at ——, 123 S.Ct.

---

4. "[A] trial court is given wide latitude to assess the credibility of witnesses [in determining whether consent to a search is voluntarily given]. Nonetheless, the court's discretion is not unlimited. A trial court's decision to credit a witness' testimony may be held erroneous on review if 'documents or objective evidence . . . contradict the witness' story; or the story itself [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Haynes*, 301 F.3d at 679–81 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

5. The reason for this rule is clear: "If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. . . . Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a 'cure-all,' and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to 'a form of words.'" *Brown*, 422 U.S. at 603, 95 S.Ct. 2254.

at 1847 (quoting *Wong Sun,* 371 U.S. at 486); *see also Elstad,* 470 U.S. at 306, 105 S.Ct. 1285. In making this determination, the "[r]elevant considerations include observance of *Miranda,* 'the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.'" *Kaupp,* —— U.S. at ——, 123 S.Ct. at 1847 (quoting *Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254). Moreover, the burden of persuasion in this inquiry is on the Government. *See Kaupp,* —— U.S. at ——, 123 S.Ct. at 1847 (citing *Brown,* 422 U.S. at 604).

### 2. Discussion

■ In this case, these relevant considerations require the Court to suppress Defendant's confession. Here, Officer Newcomer's observance of *Miranda* prior to questioning favors the Government's argument against suppression. However, it is the only factor that favors the Government, and compliance with *Miranda* alone is an insufficient basis upon which to find that a confession was purged of the taint of the Fourth Amendment violation. *See Kaupp,* —— U.S. at ——, 123 S.Ct. at 1847; *Brown,* 422 U.S. at 603 ("the *Miranda* warnings, *alone* and *per se,* cannot always make the act sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.").

In this case, the temporal-proximity factor and intervening-circumstances factor weigh heavily in Defendant's favor. The record indicates that the police arrived on the scene at approximately 7:32 p.m. *See* Def. Mot. Ex. at 1. Shortly thereafter, the police conducted the illegal search, seized the firearm, arrested Defendant, and transported him to the police station. *See id.* at 1–2. Less than one hour after the illegal search, at approximately 8:19 p.m., Defendant was given his *Miranda* warn-

ings and, during interrogation, confessed to owning and possessing the firearm in question. *See id.* at 2. This exceedingly short period favors suppression. *See Brown,* 422 U.S. at 604, 95 S.Ct. 2254 (period of less than two hours favored suppression). Further, the Government "has not even alleged 'any meaningful intervening event' between the illegal [search] and [Defendant's] confession." *Kaupp,* —— U.S. at ——, 123 S.Ct. at 1848 (quoting *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982)). Therefore, because of the exceptionally brief time interval between the illegal search and the confession and because "there was no intervening event of significance whatsoever," it is clear that Defendant's confession arose as a result of the illegal search and his subsequent arrest. *Brown,* 422 U.S. at 604, 95 S.Ct. 2254; *see also United States v. Hessman,* No. 02–3038, 2003 WL 1883465, at *10 (N.D.Iowa Apr. 14, 2003). Consequently, the Court will also suppress Defendant's confession.

## III. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress evidence [docket entry 10] is **GRANTED.**

**SO ORDERED.**